ETHEL B. LEMEN-DOWNS, *Guardian, etc., et al. v.* GEORGE M. BELTZHOOVER, *Executor, etc.*

(No. 6951)

Submitted October 7, 1931.   Decided October 27, 1931.

James M. Mason, Jr., George M. Beltzhoover, Jr., J. M. Woods and Price, Smith & Spilman, for appellant.

H. H. Emmert, H. A. Downs and Poffenbarger & Poffenbarger, for appellees.

LIVELY, JUDGE:

George M. Beltzhoover, executor-trustee of David Lemen estate, complains of a decree of the circuit court of Jefferson County, subjecting him to account for salary received by him as secretary and treasurer of Hodges-Lemen Company from 1920 to 1927, inclusive.

In 1918, David Lemen and Samuel J. Hodges, competitors in the grain, feed, and coal business in Shepherdstown, combined their individual enterprises, organizing Hodges-Lemen Company, a corporation, which issued to Hodges 276 shares of stock and to Lemen 190 shares. Hodges was elected president and general manager of the corporation at an annual salary of $3,500 and Lemen became secretary and treasurer at an annual salary of $1,500. At the time of the incorporation, Lemen, being physically incapacitated and confined to his home, arranged with J. H. Price, general clerk and bookkeeper of the company, to perform the clerical duties of his office; but Lemen frequently consulted with Hodges relative to the management of the business. Lemen died in 1919 (about nine months after the incorporation of Hodges-Lemen Company) and George N. Beltzhoover, who had been Lemen's attorney, became executor and trustee of the estate under the terms of Lemen's will. In January, 1920, Beltzhoover was elected director and secretary-treasurer of Hodges-Lemen Company to succeed Lemen, with a salary of $1,500 for the latter office. Like Lemen, he arranged with Price to do the clerical duties, for which he paid Price $250 a year. After paying Price, Beltzhoover retained for himself out of the salary as secretary-treasurer the following amounts during the years 1920 to 1927, crediting the Lemen estate with the remainder:

| Year | Amount |
| --- | --- |
| 1920 | 250.00 |
| 1921 | 250.00 |
| 1922 | 600.00 |
| 1923 | 600.00 |
| 1924 | 750.00 |
| 1925 | 875.00 |
| 1926 | 1,250.00 |
| 1927 | 1,250.00 |

It is with reference to the amounts retained by Beltzhoover that this proceeding, instituted by plaintiffs (Mrs. Downs and the infant children of David Lemen) to surcharge and falsify the executor's accounts, deals. Plaintiffs base their right to the salary on an alleged verbal agreement, denied by defendant, which is the controlling issue before the court, and to

substantiate their respective contentions the following evidence was related:

According to Mrs. Lemen (now Mrs. Downs) the salaries of Hodges and Lemen were fixed "to give each of the families something to go on and would not have to wait for the semi-annual dividend"; that "Mr. Lemen said in case of his death, Mr. George M. Beltzhoover would qualify as secretary-treasurer in the same capacity that Dave had, with Holland Price doing the work for him, draw the salary for the estate as Dave was doing for himself" which Beltzhoover said "should be carried out"; that prior to Beltzhoover's election, Hodges told her (Mrs. Downs) that the salary of secretary-treasurer would be paid to Beltzhoover as executor, to which Beltzhoover assented; and that prior to the corporate meeting in January, 1921, she and her husband (Downs) went to the executor's office and discussed the salary, at which time Beltzhoover is quoted as saying that he was paying Price $250 a year, and that the balance "was going to the estate", in which statement she is corroborated by Downs. Plaintiffs show that after Beltzhoover's election as director and officer of the corporation Beltzhoover continued with Price the same arrangement that Lemen had had for performance of clerical duties attendant upon the office of secretary-treasurer; that the minute book of the corporation, kept by Beltzhoover, shows that in the years 1920 to 1927, inclusive, "George M. Beltzhoover, Executor", was elected a director, that in the years from 1920 to 1922, inclusive, "George M. Beltzhoover, Executor of David Lemen" was elected secretary-treasurer; that Beltzhoover affixed his signature to the recorded minutes as "Executor", and that for several years salary checks were issued to Beltzhoover in his executorial capacity. The descriptive words are omitted in some years in the minute book and on the salary checks, although Price states that Beltzhoover ·directed the change on the checks. Plaintiffs likewise point to defendant's settlements of 1920 and 1921, wherein Beltzhoover credited the Lemen estate with the entire $1500 received as secretary-treasurer and charged the estate with $250 paid Price and $250 retained by the executor, as well as to the settlements

for 1922 to 1925, in which he credited the estate with $650 in 1922, $650 in 1923, $500 in 1924, and $375 in 1925.

Defendant denies the alleged agreement and statements relating thereto as detailed by Mrs. Downs and her husband, and contends that the descriptive words "Executor" or "Executor of David Lemen" used in the corporate records are merely *descriptio personam;* and to establish the truth of his denial directs attention to the fact that his arrangement with Price was a personal one, for which services he gave Price his individual check, which Price verifies; that he made settlement of his accounts annually, copies of which were sent to Mrs. Downs or her attorney, and about which Mrs. Downs says that "the first few I received I went over carefully "but after the first two years paid little attention to them because" they came "when I was busy or the children were sick"; and that, in 1926, prior to filing his 1925 settlement, defendant mailed to Mrs. Downs' attorney a copy of his report, in which it was shown that Beltzhoover had credited the estate with $375 of the salary of secretary-treasurer that year, and on March 16, 1926, the attorney wrote as follows:

"Mr. Geo. M. Beltzhoover,
Shepherdstown, W. Va.
My dear Sir:

I apologize for not acknowledging earlier your letter of the 22nd of February enclosing copy of your report as Executor and Trustee of David Lemen, but I was unable to get a reply from Mr. and Mrs. Downs as to whether or not they had any exceptions to make to the report. I am now advised by them that they have no exceptions to take to said report."

Beltzhoover charges that exceptions to his settlement report in 1921 were filed on behalf of Mrs. Downs by her attorneys, Noll and Campbell, challenging the payments of $250 to Price and Beltzhoover, respectively, but were withdrawn after a partial hearing before Commissioner of Accounts Washington. Defendant exhibits a copy of the exceptions on which signatures, purporting to be those of attorneys Noll and Campbell, appear; and although the record of Commissioner of Accounts Washington shows that exceptions were filed, the record is silent as to specific exceptions and no written exceptions could

be found in the commissioner's files relating to the settlement. Plaintiffs deny that such exceptions were filed; and attorneys Noll and Campbell disclaim any remembrance thereof, except as to the executor's refusal to pay a furniture account. Beltzhoover explains that crediting the Lemen estate with a portion of the salary for the first few years was consonant with his custom maintained in his 64 years of active practice as an attorney, not to charge "all he could get", but to retain only such amount as fairly compensated him for his services, considering amounts credited to the estate as donations. His reports as executor show that his commissions diminished from $2,068.60 in 1920 to but a few hundred dollars in each of the subsequent years, and defendant explains that the amount retained each year was commensurate with services performed. There is no dispute that Beltzhoover rendered services to Hodges-Lemen Company, for, according to Price, the bookkeeper and later general manager, Beltzhoover examined the books of the corporation and consulted with Hodges frequently relative to the management and policy of the business, as he did with him (Price) during Hodges' absence and after Hodges' death in 1927, and always with reference to matters which were not routine.

The chancellor concluded that the salaries fixed by Hodges and Lemen at the formation of the corporation were to be considered as a distribution of profits and not for services rendered; that the same arrangement had continued after defendant became secretary-treasurer; hence, the salary received as secretary-treasurer was an asset of the Lemen estate. Inasmuch as no duty to act as secretary-treasurer devolved upon Beltzhoover by reason of his executorial capacity, the presumption is that he acted as such for his personal enrichment, in the absence of an agreement to the contrary (*In re Fidelity Co.,* 51 N. Y. Supp. 1124, 1126); and the burden of establishing such an understanding by a clear preponderance of the evidence is upon plaintiffs. Since those persons who might verify the respective contentions of the litigants—Hodges, his wife, Schley, a director in the corporation, and Commissioner of Accounts Washington—are dead, resort must

be had to circumstances and acts of the parties to determine which of the parties shall prevail; and since we are asked to reverse a finding of fact by a chancellor, we must determine if plaintiffs have borne their burden of proof.

We think not. Despite the various factors and testimony adduced by plaintiffs as corroborative of Mrs. Downs' contention, there is one element of evidence which plaintiffs' counsel and the chancellor below have ignored. Mrs. Downs admits receiving and checking the settlement reports for the first two years; yet, she admits that she made no objection thereto. Assuming that defendant's averment that she filed an objection for the first year, which was withdrawn, is not supported by the evidence, does not her non-action for eight years indicate a silent acquiescence to Beltzhoover's *jus disponendi* of the salary? Again, in 1926, her attention was particularly directed to the report for 1925, in which but $375 had been credited to the estate, and her attorney wrote that she had no objection to it. She offers no explanation to the letter nor does she repudiate the attorney's authority to write it. If, as she now claims, she was entitled to the entire salary (less the amount paid Price), why should she have been content with but $375? Her conduct militates against her present contention. Such positive written evidence of her attitude in 1926 is deserving of peculiar weight in a maze of circumstantial evidence. While we do not say that the contents of the letter and failure to object over a period of years act as an estoppel, in determining the salient issue here—the existence of the alleged agreement—they definitely preclude a preponderance in favor of plaintiffs. While ordinarily a finding of fact by a chancellor will not be disturbed on appeal, such finding will be reversed when contrary to the plain preponderance of the whole evidence, or where the finding is in favor of a party who carries the affirmative of a controlling issue and has not sustained the burden. *Meyers* v. *Land Company*, 107 W. Va. 632.

Having thus concluded, discussion of other assignments of error, not urged by appellant in oral argument, is unnecessary.

We reverse the decree of the circuit court.

*Reversed and remanded.*